## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTYNA C. LUJAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-21-00250-PRW |
| THE HANOVER INSURANCE COMPANY, INC., | ) ) ) ) |
| Defendant. | ) ) |

### **ORDER**

Before the Court is Defendant Hanover Insurance Company's Motion for Partial Summary Judgment (Dkt. 24). Plaintiff Kristyna Lujan filed a response in opposition (Dkt. 27) and Defendant Hanover filed a reply (Dkt. 28). For the following reasons, Defendant's Motion for Partial Summary Judgment is **DENIED**.

### *Background*

Kristyna Lujan owns a house in Oklahoma City, Oklahoma, where she permanently resides. Ms. Lujan contracted with Hanover Insurance Company to insure the residence through a homeowners insurance policy (the "Policy"). Hanover issued the Policy to Ms. Lujan and the Policy covered Ms. Lujan's residence, subject to the terms and conditions of the Policy, from July 5, 2019, to July 5, 2020. As relevant for this motion, "Coverage D" of the Policy reads as follows:

> **Coverage D – Loss of Use**
>
> . . .
>
> **1.**   If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover . . .

1

> a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> . . .
>
> Payment [] will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.[1]

In the definitions section of the Policy, Hanover defines the term "residence premises" as follows:

> **8.** "Residence premises" means:
>
>> a. The one family dwelling, other structures, and grounds; or
>>
>> b. That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.[2]

On February 23, 2020, Ms. Lujan discovered a fire in and around the walls surrounding the fireplace in the living room of her residence. The fire was contained and extinguished before spreading to the rest of the residence, but the living room sustained some amount of damage. The following day, Ms. Lujan submitted an insurance claim to Hanover for damage to the "wood in the wall and the siding in the sun room."[3] Hanover commissioned an inspection and estimate of the damage, and subsequently tendered a

---

[1] Policy (Dkt. 24, Ex. 1), at 7.

[2] *Id.* at 5.

[3] Claim (Dkt. 24, Ex. 3), at 3.

check to Ms. Lujan on the basis of this estimate.[4] Ms. Lujan then hired an independent contractor who removed the fireplace, examined the interior of the walls, and estimated the required repairs and significantly higher than the amount tendered by Hanover. Ms. Lujan claims to have provided Hanover with the independent estimates of repair costs and asserts that Hanover has ignored her claims and refused to review the independent estimates. She further asserts that she has been unable to make repairs, even at her own expense, due to Hanover's instructions not to begin repairs before Hanover reviews the independent estimate. Therefore, she claims that her living room is unusable and still unrepaired.

On March 23, 2021, Ms. Lujan filed a complaint with this Court, alleging that Hanover breached the implied covenant of good faith and fair dealing contained in the Policy and seeking compensatory and punitive damages. She also claims entitlement to additional living expenses from Hanover, asserting that the loss of her living room has rendered her residence not fit to live in. After answering the complaint, Hanover filed this motion for partial summary judgment, arguing Ms. Lujan's residence is not unfit to live in and therefore Hanover is entitled to judgment as a matter of law on this claim. The matter is fully briefed.

---

[4] Ms. Lujan alleges that Hanover's own inspector "advised that the full extent of damage was unascertainable" without removing the exterior of the fireplace to inspect internal damage" to the walls, but nevertheless provided an estimate without removing the fireplace as described. Compl. (Dkt. 1), ¶ 8–9.

## *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[5] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[6] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[7] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[8] At the summary judgment stage, the Court views the facts and makes all reasonable inferences in the light most favorable to the nonmoving party.[9]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record" which show "that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute," or by showing "that [the

---

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[8] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[9] *See Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

4

movant] cannot produce admissible evidence to support the fact."[10] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[11] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[12]

### *Discussion*

Hanover argues that additional living expenses are unavailable where the whole of a residence has not been rendered unlivable (and indeed, where the insured party has continued to live). Ms. Lujan argues that a residence may be rendered unlivable and additional living expenses are therefore due where only a part of the residence is unfit to live in. Resolving this question requires the Court to first interpret the insurance contract—a matter of law subject to a summary judgment determination—and then apply the facts from the record to the interpreted contract.

In a diversity action, the Court applies the substantive law of the forum state—here, Oklahoma.[13] Under Oklahoma law, it is well-established "that insurance policies are

---

[10] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[11] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[12] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[13] *See Govinda, LLC v. Columbia Mut. Ins. Co.*, 545 F. Supp. 3d 11167, 1170 (W.D. Okla. 2021) (citing *Edens v. Neth. Ins. Co.*, 834 F.3d 1116, 1120 (10th Cir. 2016)). This initial step requires the application of Oklahoma's choice-of-law provisions. For contracts, the Court interprets the contract "according to the law and usage of the place where it is to be

contracts and subject to the rules for interpretation of contracts."[14] The interpretation of an insurance contract and whether it is ambiguous "is a matter of law for the Court to determine and resolve accordingly,"[15] and the Court's role in this interpretive process is to "give effect to the manifest intentions of the parties."[16]

In a case where opposing parties "ascribe two irreconcilable interpretations to the same term of an insurance contract," the Court "must determine if the insurance contract is unambiguous despite the parties' conflicting interpretations."[17] When conducting this inquiry, the Court seeks to determine whether the word or phrase at issue "'is susceptible to two interpretations' on its face."[18] This inquiry is conducted "from the standpoint of a reasonably prudent lay person, not from that of a lawyer."[19] Thus, the Court will not adopt "a forced or strained construction,"[20] take "a provision out of context,"[21] or "narrowly

---

performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *See* Okla. Stat. tit. 15, § 162. Here, the insurance contract was both made in Oklahoma and intended to be performed in Oklahoma, so it is interpreted according to Oklahoma contract law.

[14] *Am. Econ. Ins. Co. v. Rutledge*, 833 F. Supp. 2d 1320, 1322 (W.D. Okla. 2011) (citing *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002)).

[15] *Matlock v. Tex. Life Ins. Co.*, 404 F. Supp. 2d 1307, 1311 (W.D. Okla. 2005) (quoting *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991)).

[16] *Rutledge*, 833 F. Supp. 2d at 1322.

[17] *Matlock*, 404 F. Supp. 2d at 1311 (citing *Bituminous Cas. Corp. v. Cowen Constr. Inc.*, 55 P.3d 1030, 1033 (Okla. 2002)).

[18] *Id.* (quoting *Cranfill*, 49 P.3d at 706).

[19] *Id.* (quoting *Cranfill*, 49 P.3d at 706).

[20] *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998) (citing *Dodson*, 812 P.2d at 376).

[21] *Id.*

focus[] on a [single] provision"[22] such that it would "make for either party a better contract than the one which was executed."[23]

Here, the Court is tasked with determining whether the Policy provision permitting additional living expenses when "a loss . . . makes that part of the 'residence premises' where you reside not fit to live in" requires the entire residence to be unfit to live in (as Hanover argues) or only requires a portion of the residence to be unfit to live in (as Ms. Lujan argues). If the contract is fairly susceptible to either interpretation—that is, if it is ambiguous—then "it must be construed against Defendant as the drafter."[24]

Following the rules of construction and viewing the Policy's language from the standpoint of a reasonably prudent layperson, the Court finds that the Policy is ambiguous and susceptible to two or more meanings, and therefore must be construed against Hanover.

The term "not fit to live in"—synonymized to "unfit to reside in" for definitional ease—is defined by Webster's Dictionary as "unsuitable"[25] "to dwell permanently or continuously."[26] Were this the only relevant term in the contract, the inquiry might end there and be resolved in Hanover's favor. But the term "not fit to live in" is preceded by "that part of the 'residence premises' where you reside."[27] As Ms. Lujan observes, "part"

---

[22] *Id.*

[23] *Bituminous*, 55 P.3d at 1033.

[24] *Matlock*, 404 F. Supp. 2d at 1312.

[25] *Unfit*, Merriam-Webster's Dictionary (11th ed. 2002).

[26] *Reside*, Merriam-Webster's Dictionary (11th ed. 2002).

[27] *See* Policy (Dkt. 24, Ex. 1), at 7.

is defined as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole,"[28] and "of" is "used as a function word to indicate the whole that includes the part denoted by the preceding word."[29] This antecedent noun and preposition operate as a limiting clause, indicating a guarantee of coverage not just when the entire residence is unlivable but also when only a part or portion of the residence is unlivable. Thus, a plain-text reading of the Policy supports Ms. Lujan's position.

Hanover attempts to rally its preferred reading by pointing to context derived from other policy provisions. While these contextual arguments carry some support for Hanover's position, they do not conclusively establish that Hanover's reading the only clear, unambiguous reading of the Policy.[30]

*First*, Hanover points to a later portion of Coverage D that states: "Payment [] will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere."[31] Hanover

---

[28] *Part*, Merriam-Webster's Dictionary (11th ed. 2002).

[29] *Of*, Merriam-Webster's Dictionary (11th ed. 2002).

[30] Hanover also spends much time arguing that Ms. Lujan's claim must be rejected as she has, in fact, lived in the residence despite the Policy language of "not fit to live in." The Court finds this unpersuasive, as a residence may be legally unfit to live in for a variety of reasons and yet the occupant may nonetheless still reside there for a variety of other reasons. Furthermore, in light of the Court's overall conclusion, the fact of Ms. Lujan's continued residence in the whole house does not impact whether Hanover is liable for loss of use of a portion of the house. Hanover's arguments regarding the comparative change on Ms. Lujan's standard of living should be reserved for trial and for disputing what is owed in meeting Ms. Lujan's "normal standard of living." Policy (Dkt. 24, Ex. 1), at 7.

[31] *Id.*

focuses on the term "*permanently relocate*" and argues that the Court should infer that Ms. Lujan must have at least temporarily relocated in order to unlock additional living expenses coverage. However, this suggested inference goes against the express language of the Policy. If some form of relocation is always necessary to unlock these expenses, section 1.a. would have been better named "Relocation Expenses." But instead, section 1.a. is named "Additional Living Expenses" and contains the language "any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living."[32] This broad language creates a stronger inference that additional living expenses is intended to be a comprehensive category for which relocation is a sufficient, but not necessary, condition to unlock recovery.

*Second*, Hanover argues that adding the limiting construction of "that part of" to the Policy renders the phrase "where you reside" superfluous. It is not clear to the Court how giving meaning to "that part of" renders "where you reside" superfluous. Indeed, when it comes to superfluidity, the inverse is true: if the term "that part of" was not in the Policy, the Policy would clearly and unambiguously endorse the reading that Hanover advocates, so, in reality, it is Hanover's proposed reading that would render a term in the Policy superfluous.[33]

---

[32] *Id.*

[33] *Compare* "If a loss covered under this Section makes the 'residence premises' where you reside not fit to live in," *with* "If a loss covered under this Section makes that part of the 'residence premises' where you reside not fit to live in." The proposed reading by Hanover would be fully encapsulated by the first reading, which renders meaningless and superfluous the term "that part of."

*Third*, Hanover contends that the language of Coverage D must be viewed alongside the definition of "residential premises," which is defined as either a one-family dwelling or a two-family dwelling.[34] Hanover argues that the term "that part of" is applicable only in the situations where the insured lives in one unit of a two-family dwelling. While there is some logical purchase to this reading, Hanover is advocating for a part-time reading of the term "that part of" where the Policy itself does not dictate or distinguish that term is applicable only in some scenarios. So this proposed part-time reading of "that part of" cannot foreclose Ms. Lujan's reading of the term.

The Court thus finds that a plain reading of the Policy favors Ms. Lujan's proposed reading, and the contextual arguments Hanover raises are unable to definitive move the needle to one side or the other. And even if the relevant provisions were ambiguous, the policy must be strictly construed against Hanover, the drafter, such that Hanover can be held liable for failing to pay additional living expenses for the loss of use of one room in Ms. Lujan's residence.[35]

---

[34] *See* Policy (Dkt. 24, Ex. 1), at 5.

[35] This outcome—that Hanover is liable for loss of use of even a part of the covered residence—is embraced by a leading treatise on casualty insurance claims. *See* 3 Casualty Insurance Claims, *Assessing personal property losses and related indirect loss* § 50:23 (4th ed.) (providing examples of when "additional living expenses" applies: "If the insured regularly ate all meals at a restaurant, a kitchen fire would not necessarily increase those costs . . . . [but i]f the insured regularly cooked and ate at home, then the cost of eating out each day would be an additional living expense, less the insured's typical cost of groceries").

*Conclusion*

Accordingly, Hanover's Motion for Partial Summary Judgment (Dkt. 24) is **DENIED**.

**IT IS SO ORDERED** this 27th day of May 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE